Docket No. 91305–Agenda 36–September 2001.

MARY ANN GLENN, Adm’r of the Estate of William E. Glenn,

 Deceased, Appellee, v. HERSCHEL JOHNSON, Appellant.

Opinion filed January 25, 2002.

JUSTICE KILBRIDE delivered the opinion of the court:

This case involves the distribution and allocation of funds received in a third-party settlement pursuant to a wrongful-death action brought by the decedent’s personal representative. We are asked to consider: (1) the effect that an employer’s right to reimbursement from third-party settlements under the Workers’ Compensation Act (Act) (820 ILCS 305/1 
et seq
. (West 2000)) has on the allocation of attorney fees; (2) the employer’s credit for future benefit payments under the Act, and the distribution of the funds, as well as (3) the propriety of allocating a portion of the funds for loss of consortium where the surviving spouse has not filed an individual claim.

After reviewing the parties’ arguments, we hold that there is insufficient evidence in the record to support a proper analysis on the merits of these questions. Thus, we reverse the judgments of the appellate court and the circuit court of St. Clair County and remand the cause for further proceedings consistent with this opinion.

BACKGROUND

In 1996, the decedent, William E. Glenn, was killed while working for his employer, Herschel Johnson, when the John Deere tractor he was operating overturned. Johnson subsequently began paying workers’ compensation benefits pursuant to the Act (820 ILCS 305/1 
et seq
. (West 2000)).

As special administratrix of the estate, the decedent’s wife, Mary Ann Glenn (Glenn), filed a complaint under the Wrongful Death Act (740 ILCS 180/1, 2 (West 1996)) against several defendants, including Johnson, Herschel Johnson Real Estate and Development Corporation (development company), and John Deere Company (John Deere). The development company settled the case for $25,000. Johnson agreed that this settlement would not be subject to his statutory right as the decedent’s employer to a workers’ compensation reimbursement lien (lien). See 820 ILCS 305/5(b) (West 2000).

Later, the case against John Deere was settled for $225,000, and Glenn filed a petition as special administratrix to approve the settlement. She subsequently petitioned the probate court to be appointed the guardian of the estate and person of her minor son. Next, Johnson intervened in the proceedings to assert his lien against the settlement proceeds. Glenn subsequently filed a petition nominating herself as the decedent's independent administratrix under article 28 of the Probate Act of 1975 (755 ILCS 5/28–1 
et seq
. (West 2000)), and a petition seeking approval and distribution of the settlement. The probate court granted letters of administration and appointed Glenn independent administratrix. Glenn’s probate court case wrongful-death action were consolidated, and Glenn was appointed the guardian of the estate and person of her minor son for purposes of the litigation.

The parties agreed that Johnson could seek a lien only on the $225,000 settlement obtained from John Deere. After hearing the parties’ arguments, the trial court calculated the amount of Johnson’s lien using the following method. First, it deducted approximately one-third, or $74,992.50, of the settlement for the plaintiff’s private contractual attorney fee, and $24,776.68 for costs. This left a net settlement recovery of $125,230.82. Next, the court found that Johnson was entitled to a $51,000 workers’ compensation lien, apparently based on the workers’ compensation benefits he had already paid. The court then determined that Johnson was responsible for 40.7% of the total costs, or $10,084.15, because $51,000 was 40.7% of the net settlement recovery. The trial court also charged Johnson with an additional 25% of his $51,000 lien as the mandatory 25% attorney fee provided in the Act (see 820 ILCS 305/5(b) (West 2000)). These deductions left Johnson with a net reimbursement lien of $28,165.85.

The trial court next ordered that Glenn and her minor son share the remaining $84,314.97
(footnote: 1) from the settlement. The court allocated half this amount, or $42,157.49, to Glenn for her loss of consortium, society, and companionship and the other half to her minor son. Since awards for loss of consortium are not subject to an employer’s lien under the Act, Johnson was eligible for a credit toward his future benefit payments for only the $42,157.49 allocated to the minor child. The trial court then determined that Johnson was entitled to a moratorium period of 146.44 weeks ($42,157.49 ÷ $287.89 per week = 146.44 weeks) on future payments since he was making benefit payments of $287.89 per week. He was, however, required to make weekly payments of $71.97 on the 25% statutory attorney fee during this period.

The appellate court affirmed, but modified the trial court’s judgment. 319 Ill. App. 3d 625. The court found that the trial court erred by awarding fees for both one-third of the full settlement under the plaintiff’s private fee agreement and 25% of the employer’s lien under the statutory fee provisions in the Act (820 ILCS 305/5(b) (West 2000)). 319 Ill. App. 3d at 631. The court stated that the total attorney fees should be limited to one-third of the $225,000 settlement, or $75,000, and that the employer’s share of this amount should be 25% of its $51,000 lien, or $12,750. The appellate court also reduced Johnson’s share of the costs from 40.7% to 23% because his $51,000 lien represented only 23% of the $225,000 settlement. 319 Ill. App. 3d at 631-32.

The appellate court also rejected Johnson’s argument that the trial court erred by allocating half of the net recovery for Glenn’s loss of consortium. 319 Ill. App. 3d at 632. The court found that the pleadings and transcripts adequately demonstrated that this claim was made in the original complaint Glenn filed, even though it was not set out as a separate count. In a footnote, the court stated that even though the statute of limitations had run on Glenn’s consortium claim at the time of the settlement, it believed that the “relation back” doctrine would have permitted her to amend “her complaint” to separate out this claim. 319 Ill. App. 3d at 632 n.1.

The appellate court then recalculated the net recovery for purposes of the lien calculation to be $92,671.96 by subtracting from the $225,000 settlement Johnson’s net lien recovery of $32,551.36, total attorney fees of $75,000, and costs of $24,776.68. It allocated half of this net recovery ($46,335.98) for loss of consortium. This yielded a moratorium period on benefit payments of 160.95 weeks ($46,335.98 ÷ $287.89 per week = 160.95 weeks). During this time, Johnson was still obligated to pay $71.97 per week for his share of the attorney fees. 319 Ill. App. 3d at 634. Johnson filed a petition for leave to appeal, and this court granted the petition. 177 Ill. 2d R. 315(a).

ANALYSIS

The parties in this case present three issues for consideration by this court: (1) the proper allocation of attorney fees when an employer seeks reimbursement of amounts payable under the Act from a third-party settlement; (2) the availability of an employer’s credit for future workers’ compensation benefit payments; and (3) the propriety of allocating a portion of a third-party settlement for loss of consortium where the decedent’s spouse did not file a complaint as an individual.

I. Calculation of Attorney Fees

Johnson claims that the appellate court erred by calculating his statutory 25% share of the plaintiff’s attorney fees as 25% of the attorney’s private contractual fee of 33⅓% of the gross settlement. He contends that the calculation is controlled by our holding in 
In re Estate of Dierkes
, 191 Ill. 2d 326, 331-32 (2000). In 
Dierkes
, this court held that where the employer’s lien is greater than the third-party settlement, the Act limits attorney fees to 25% of the settlement amount, regardless of the amount stated in the fee agreement. 
Dierkes
, 191 Ill. 2d at 335.

We note that in 
Dierkes
 the parties agreed that the net present value of the workers’ compensation benefits due far exceeded the settlement amount. 
Dierkes
, 191 Ill. 2d at 329. Here, no evidence was taken regarding the net present value of Johnson’s payment obligation. The trial court apparently determined Johnson’s share of attorney fees based solely on the arguments presented by the parties’ counsel and took no testimony and admitted no evidence at the hearing. Without any basis for determining the net present value of Johnson’s future benefit payments, the trial court could not properly determine the applicability of 
Dierkes
. Thus, we reverse the judgments of the trial court and the appellate court and remand the cause to the trial court for a determination of the net present value of Johnson’s liability for workers’ compensation benefit payments. After making this determination, the trial court should consider the applicability of 
Dierkes
 and recalculate Johnson’s share of the attorney fees.

 II. Employer’s Credit for Future Benefit Payments

Johnson next argues that he is entitled to recover the entire settlement from John Deere because his liability under the Act exceeds the settlement amount. See 
Dierkes
, 191 Ill. 2d at 333. He contends that the appellate court erred by merely awarding him a $51,000 lien against the settlement, representing only past benefits paid, without any credit for his future payment obligation.

An employer may seek from any third-party recovery both a lien for workers’ compensation benefits already paid and a credit for future payments owed pursuant to section 5(b) of the Act (820 ILCS 305/5(b) (West 2000)). 
Zuber v. Illinois Power Co.
, 135 Ill. 2d 407, 411 (1990). This court has recognized the crucial role that the reimbursement of an employer from any third-party recovery plays in the overall scheme of the Act. 
Dierkes
, 191 Ill. 2d at 331-34. Reimbursement serves to balance the interests and rights of the employer and the employee in the settlement funds. It allows employers to recoup “ ‘so much of the negligence recovery as is necessary to reimburse it for its compensation outlay, and to give the employee the excess,’ ” while providing the employee with fuller compensation for actual damages than is available under the Act alone. 
Dierkes
, 191 Ill. 2d at 332, quoting 6 A. Larson & L. Larson, Larson’s Workers’ Compensation Laws §110.02, at 110–3 to 110–4 (1999).

Here, the trial court set the amount of Johnson’s recovery without the benefit of any evidence admitted at the hearing. We have already determined that this cause must be remanded for a new hearing on the net present value of Johnson’s payment obligation and the recalculation of his share of the attorney fees pursuant to 
Dierkes
. This change will inevitably alter the other calculations relevant to the trial court’s determination of Johnson’s recovery from the settlement, requiring the court to perform its analysis again. Thus, on remand, we additionally direct the trial court to reevaluate Johnson’s right to a credit for future payments consistent with this court’s decisions in 
Dierkes
, 191 Ill. 2d 326, and 
Zuber
, 135 Ill. 2d 407.

III. Damages for Loss of Consortium

Finally, Johnson claims that the appellate court improperly allowed damages for loss of consortium due to its erroneous belief that the decedent’s wife could have amended the original complaint to add a new claim for loss of consortium in her individual capacity. Johnson contends that, while acknowledging that the statute of limitations had expired on this claim, the appellate court incorrectly believed that an amendment would have been allowed because it would have “related back” to the original filing, making it a change “of form and not of substance.” 319 Ill. App. 3d at 632 n.1.

Johnson maintains, however, that since Glenn had not previously filed a complaint in her individual capacity, appending an individual claim for loss of consortium to the original complaint would have added a separate claim by a new party. Under these circumstances, the amendment could not have related back to the original complaint. See 
McGinnis v. A.R. Abrams, Inc.
, 141 Ill. App. 3d 417 (1986).

We believe that the relation back doctrine is irrelevant in this case. The Wrongful Death Act (740 ILCS 180/2 (West 1996)) states: “Every [wrongful-death] action 
shall be brought by and in the names of the personal representatives
 of such deceased person, and, *** except as otherwise hereinafter provided ***.” (Emphasis added.) Thus, to recover damages under the Wrongful Death Act, the decedent’s personal representative must file the cause of action alleging wrongful death. 
Pasquale v. Speed Products Engineering
, 166 Ill. 2d 337, 360-61 (1995). The personal representative is merely a nominal party to this action, effectively filing suit as a statutory trustee on behalf of the surviving spouse and next of kin, who are the true parties in interest. 
VanMeter v. Goldfarb
, 317 Ill. 620, 622 (1925); 
In re Estate of Fields
, 588 S.W.2d 50, 53 (Mo. App. 1979) (applying Illinois law).

In addition, the Wrongful Death Act provides that “the amount recovered in every [wrongful-death] action 
shall be for the exclusive benefit of the surviving spouse and next of kin
 of such deceased person ***.” (Emphasis added.) 740 ILCS 180/2 (West 1996). This provision is designed “to compensate the surviving spouse and next of kin for the pecuniary losses sustained due to the decedent’s death.” 
Elliott v. Willis
, 92 Ill. 2d 530, 540 (1982). See also 
Knierim v. Izzo
, 22 Ill. 2d 73, 82 (1961); 
Hall v. Gillins
, 13 Ill. 2d 26, 30 (1958). This court has recognized loss of consortium as a compensable “pecuniary injury” under the Wrongful Death Act. 
Elliott
, 92 Ill. 2d at 540.

Here, the decedent’s personal representative is the administratrix of his estate, Glenn. As the decedent’s personal representative, Glenn properly filed a cause of action under the Wrongful Death Act alleging, 
inter alia
, that due to the decedent’s death his next of kin “have sustained other pecuniary damage, including loss of his love, companionship, society, affection, guidance, comfort and consortium.” This allegation undeniably sought damages for loss of consortium on behalf of the decedent’s surviving spouse. As the surviving spouse, Glenn was a real party in interest in the original complaint. Thus, the amount recovered for loss of consortium is for her exclusive benefit and not subject to the workers’ compensation lien of the decedent’s employer. See 
Page v. Hibbard
, 119 Ill. 2d 41, 47-48 (1987).

The identity of the personal representative who filed the complaint is irrelevant since the representative is merely a nominal party acting on behalf of the true beneficial plaintiffs, who include Glenn in this case. See 
Wilbon v. D.F. Bast Co.
, 73 Ill. 2d 58, 68 (1978); 
VanMeter v. Goldfarb
, 317 Ill. 620, 622 (1925);
 In re Estate of Fields
, 588 S.W.2d 50, 53 (Mo. App. 1979) (applying Illinois law). Thus, requiring Glenn to file an amendment to the original complaint for loss of consortium in her individual capacity would be unnecessarily duplicative and have no substantive effect on the cause of action. See 
Knierim
, 22 Ill. 2d at 82-83 (holding that a surviving spouse may not seek damages for loss of consortium under both the Wrongful Death Act and the common law since the differences between the two counts are not sufficiently significant).

Moreover, 
only
 the decedent’s personal representative is permitted to file a claim under the Wrongful Death Act. The statute does not authorize the filing of individual causes of action. 740 ILCS 180/2 (West 1996) (“Every such action 
shall
 be brought by and in the names of the 
personal representatives
 of” the decedent (emphases added)). See also 
Hall
, 13 Ill. 2d at 30 (recognizing that the requirement of a single action filed on behalf of the beneficial plaintiffs avoids multiple lawsuits); 
Johnson v. Village of Libertyville
, 150 Ill. App. 3d 971, 974 (1986) (noting that the Wrongful Death Act does not create any individual right to sue). In the context of the wrongful-death action filed in the instant case, it would be futile to require Glenn to file an additional claim as an individual to protect her interests under the Wrongful Death Act as the decedent’s surviving spouse.

Finally, we note that the settlement in this case did not apportion the award between the two beneficiaries. Although trial courts have the authority to allocate settlement proceeds among competing claims (see 
Bart v. Union Oil Co.
, 236 Ill. App. 3d 964, 966 (1992)), such determinations must be made based on adequate factual support (see 
Fret v. Tepper
, 248 Ill. App. 3d 320, 328 (1993)).  In addition, the Wrongful Death Act requires the trial judge to “conduct a hearing to determine the degree of dependency of each beneficiary upon the decedent” prior to calculating the damages to be awarded to each beneficiary. 740 ILCS 180/2 (West 1996).  Our review of the record in this case reveals that no such hearing was held and that the trial court had virtually no basis for allocating the settlement proceeds between Glenn’s claim and the claim of her minor son. The only facts in the record that are relevant to this determination may be gleaned from comments made during counsel’s arguments at the hearing. These comments reveal that Glenn is a registered nurse and that the decedent was apparently working only part-time, earning relatively low wages, at the time of his death.

Due to this dearth of evidence, the trial court had no basis in the record to support 
any
 allocation of the settlement. Thus, we reverse the judgments of the appellate and trial courts and remand the cause for further evidentiary proceedings on the proper allocation of the settlement proceeds. On remand, the trial court should allocate the settlement proceeds fairly and reasonably in light of the entire settlement and taking into account that Johnson’s lien does not attach to Glenn’s loss of consortium award as well as the importance of protecting Johnson’s lien rights under section 5(b) of the Workers’ Compensation Act. See 
Page
, 119 Ill. 2d at 47-48; 
Bart
, 236 Ill. App. 3d at 966.

CONCLUSION

In sum, we hold that the trial court did not have a sufficient evidentiary basis to issue an order allocating a portion of the plaintiff’s attorney fees to Johnson, setting the amount of Johnson’s lien and credit for future benefit payments, and allocating the settlement between the claims of Glenn and her minor son. On remand, the trial court should hear all the evidence necessary to enter reasoned decisions on each of these issues.

The judgments of the appellate court and the trial court are reversed, and the cause is remanded to the circuit court of St. Clair County for further proceedings consistent with this opinion.

Appellate court judgment reversed;

circuit court judgment reversed;

cause remanded with directions.

CHIEF JUSTICE HARRISON took no part in the consideration or decision of this case.

FOOTNOTES
1:     
1
The trial court apparently calculated this value by subtracting Johnson’s $28,165.85 lien and the 25% statutory attorney fee of $12,750 from the net settlement recovery of $125,230.82.